# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

------------------------------------–

In re:

Tooling Science, Inc.

                          Debtor.

Bky. No. 16-41999
Chapter 11 Case

**NOTICE OF PRELIMINARY AND FINAL HEARINGS AND MOTION FOR EXPEDITED RELIEF AND FOR AN ORDER APPROVING POST-PETITION SECURED LOAN**

·------------------------------------

TO:    ALL PARTIES IN INTEREST AND OTHER ENTITIES AS SPECIFIED IN LOCAL RULE 9013-3:

1.    Tooling Science, Inc., a Minnesota Corporation ("Debtor"), by and through its undersigned attorneys, moves the court for the relief requested and gives notice of hearing herewith.

### PRELIMINARY HEARING

2.    The court will hold a <u>preliminary expedited hearing</u> on this motion at **10:00 a.m.** on July 6, 2016, or as soon thereafter as counsel may be heard, in Courtroom 2B of the U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101, before the Honorable William J. Fisher, United States Bankruptcy Judge.

3.    Local Rule 9006-1(c) provides deadlines for the Motion.  However, given the nature of the expedited relief sought, Movant does not object to the filing of written responses in not less than two hours prior to the time set for the hearing.  **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

## FINAL HEARING

4.     The court will hold a <u>final hearing</u> on this motion at **1:30 p.m.** on July 26, 2016, or as soon thereafter as counsel may be heard, in Courtroom 2B of the U.S. Courthouse, 316 North Robert Street, St. Paul, Minnesota 55101, before the Honorable William J. Fisher, United States Bankruptcy Judge. **THE HEARING ON THIS MOTION OR THE PRELIMINARY MOTION MAY BE CONTINUED BY THE COURT, AT THE HEARING, WITHOUT FURTHER NOTICE TO ANY PARTY.**

5.     Pursuant Local Rule 9006-1(c) any response related to issues to be considered at the Final Hearing must be filed and delivered not later than five (5) days before the time set for the Final Hearing. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

6.     The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Bankruptcy Rule 5005 and Local Rule 1070-1. Venue of this case and the Motion are proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding. The petition commencing this Chapter 11 case was filed on June 30, 2016 (the "Petition Date"). The case is now pending in this Court.

7.     This motion is filed under Bankruptcy Rule 4001(b) and Local Rule 4001-2. This proceeding arises under 11 U.S.C. § 364.

## BACKGROUND

8.     Two parties have secured interests in the Debtor's assets. MidwestOne Bank has a first position blanket lien on all of the assets of the Debtor, including cash collateral assets. In addition, Brian Burley, Dennis Vlasak and Terry Back (collectively the "Secured Lender Parties") have all filed UCC-1s for loans they have given to the Debtor. A true and accurate copy

of this UCC-1 financing statement is attached as **Exhibit A** to this motion. All of these individuals are officers and insiders of the Company.

9.      Mr. Vlasak has provided $50,000.00 in pre-petition financing to the Debtor under the terms of a Secured Revolving Demand Promissory Note (the "Vlasak Note"). The Vlasak Note provides for a maximum amount of $100,000.00 and an interest rate of 3.5% per annum. A true and accurate copy of the Vlasak Note is attached as **Exhibit B** to this Motion.

10.      Mr. Burly has a Secured Revolving Demand Promissory Note in the maximum amount of $50,000.00 (the "Burly Note"). The rate of interest on the Burly Note is 3.5% per annum. A true and accurate copy of the Burly Note is attached as **Exhibit C** to this Motion.

11.      Mr. Back has a Secured Revolving Demand Promissory Note in the maximum amount of $50,000.00 (the "Back Note"). The rate of interest on the Burly Note is 3.5% per annum. A true and accurate copy of the Back Note is attached as **Exhibit D** to this Motion.

12.      The Vlasak Note, the Burly Note, and the Back Note shall be collectively referred to as the "Individual Secured Notes."

## SUMMARY OF RELIEF SOUGHT

13.      Each of the Secured Lender Parties propose additional contributions of $50,000.00 each. Each of these secured loans would be made secured under the terms of the previously-filed UCC-1 and the Individual Secured Notes, with an approved post-petition lien, superior to all other liens and claims other than the lien of MidwestOne Bank.

14.      The Secured Lender Parties propose making the first $50,000.00 loan in the first week of July 2016, immediately after the preliminary hearing in this matter. The remaining loans will be provided to the Debtor under the schedule attached as **Exhibit E** to this Motion.

15.      The purpose of these loans is to provide the Debtor with sufficient cash flow to maintain operations in the near term.

16.     The Secured Lender Parties would remain in second position behind the secured loan of MidwestOne Bank. The Secured Lender Parties do not seek to "prime" their secured loan or otherwise alter the order of priority among the secured lenders in this case.

17.     Movant requests the following relief:

    a.  For a preliminary and final order allowing Debtor to enter into post-petition secured financing agreements with Brian Burley, Dennis Vlasak, and Terry Back.

    b.  For an order granting Debtor the right to a preliminary hearing for post-petition secured financing on an expedited basis.

    c.  For such other and further relief as the court deems just and equitable.

## BASIS FOR RELIEF REQUESTED

18.     The agreement with the Secured Lender Parties should be approved because it adequately protects the other secured and unsecured creditors while permitting the Debtor sufficient cash flow to maintain operations in the early stages of reorganization under the Bankruptcy Code.

19.     An immediate need exist for the Debtor to obtain further credit from the Secured Lender Parties. Without such funds, the Debtor will not be able to continue the operation of its business and to pay its employees, and reorganization may become impossible.

20.     Debtor is unable to obtain secured or unsecured credit from any other source. The terms of the Individual Secured Notes are reasonable and fair and made in good faith.

## CONCLUSION

21.     Pursuant to Local Rule 9013-2(c), the Debtor states that should testimony be necessary at either the preliminary or final hearing on this matter, Debtor reserves the right to call the following witness(es):

     a.   Mr. Brian Burley, President of the Debtor;

     b.   Mel Enger, CPA,

     c.   Other employees or agents of the Debtor as may be necessary.

22.     This motion is further supported by a memorandum of law, attached hereto and incorporated by reference herein.

WHEREFORE, Debtor prays for an order of the court as follows:

1.     Granting Debtor a hearing on its expedited motion.

2.     Pursuant to 11 U.S.C. § 364, authorizing the Debtor to enter into a post-petition secured financing arrangement with the Secured Lender Parties on a preliminary and final basis;

3.     Granting a post-petition lien in favor of the Secured Lender Parties, subordinate only to the secured claim of MidwestOne Bank.

4.     For such other and further relief as the court may deem just and equitable.

Respectfully submitted,


Dated:  July 1, 2016

/e/ Thomas J. Flynn
Thomas J. Flynn (30570)
Richard J. Reding (389945)
Larkin Hoffman Daly & Lindgren Ltd.
8300 Norman Center Drive, Ste. 1000
Minneapolis, Minnesota  55437-1060
952-835-3800
tflynn@larkinhoffman.com
jreding@larkinhoffman.com
Attorneys for Debtor

**EXHIBIT A**

# SECURITY AGREEMENT

| DEBTORS | Tooling Science, Inc. | Brian Burley<br>Dennis Vlasak<br>Terry Back |
|---|---|---|
| BUSINESS OR RESIDENCE ADDRESS | 9424 Deerwood Lane North | c/o Tooling Science, Inc.<br>9224 Deerwood Lane North |
| CITY, STATE & ZIP CODE | Maple Grove, MN 55369 | Maple Grove, MN 55369 |

1.      SECURITY INTEREST AND COLLATERAL. TO SECURE (CHECK ONE): ☒ THE PAYMENT AND PERFORMANCE OF EACH AND EVERY DEBT, LIABILITY AND OBLIGATION OF EVERY TYPE AND DESCRIPTION WHICH DEBTOR MAY NOW OR AT ANY TIME HEREAFTER OWE TO SECURED PARTIES (WHETHER SUCH DEBT, LIABILITY OR OBLIGATION NOW EXISTS OR IS HEREAFTER CREATED OR INCURRED, AND WHETHER IT IS OR MAY BE DIRECT OR INDIRECT, DUE OR TO BECOME DUE, ABSOLUTE OR CONTINGENT, PRIMARY OR SECONDARY, LIQUIDATED OR UNLIQUIDATED, OR JOINT, SEVERAL OR JOINT AND SEVERAL; ALL SUCH DEBTS, LIABILITIES AND OBLIGATIONS BEING HEREIN COLLECTIVELY REFERRED TO AS THE "OBLIGATIONS"), ☐ THE DEBT, LIABILITY OR OBLIGATION OF THE DEBTOR TO SECURED PARTY EVIDENCED BY THE FOLLOWING:

and any extensions, renewals or replacements thereof (herein referred to as the "Obligations"), Debtor hereby grants Secured Parties, and each of them, a security interest (herein called the "Security Interest") in the following property (herein called the "Collateral") (check applicable boxes and complete information):

(a)    INVENTORY:

      ☒    All inventory of Debtor, whether now owned or hereafter acquired and wherever located;

(b)    EQUIPMENT, FARM PRODUCTS AND CONSUMER GOODS:

      ☒    All equipment of Debtor, whether now owned or hereafter acquired, including but not limited to all present and future machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, parts and tools, and the goods described in any equipment schedule or list herewith or hereafter furnished to Secured Party by Debtor (but no such schedule or list need be furnished in order for the security interest granted herein to be valid as to all of Debtor's equipment).

      ☐    All farm products of Debtor, whether now owned or hereafter acquired, including but not limited to (i) all poultry and livestock and their young, products thereof and produce thereof, (ii) all crops, whether annual or perennial, and the products thereof, and (iii) all feed, seed, fertilizer, medicines and other supplies used or produced by Debtor in farming operations. The real estate concerned with the above described crops growing or to be grown is:_____

_____

_____

_____

and the name of the record owner is:_____

      ☐  The following goods or types of goods:_____

_____

_____

_____

_____

(c)    ACCOUNTS AND OTHER RIGHTS TO PAYMENT:

      ☒    Each and every right of Debtor to the payment of money, whether such right to payment now exists or hereafter arises, whether such right to payment arises out of a sale, lease or other disposition of goods or other property by Debtor, out of a rendering of services by Debtor, out of a loan by Debtor, out of the overpayment of taxes or other liabilities of Debtor, or otherwise arises under any contract or agreement, whether such right to payment is or is not already earned by performance, and howsoever such right to payment may be evidenced, together with all other rights and interests (including all liens and security interests) which Debtor may at any time have by law or agreement against any account debtor or other obligor obligated to make any such payment or against any of the property of such account debtor or other obligor; all including but not limited to all present and future debt instruments, chattel papers, accounts, loans and obligations receivable and tax refunds.

      ☐  _____

_____

_____

(d)    GENERAL INTANGIBLES:

      ☒    All general intangibles of Debtor, whether now owned or hereafter acquired, including, but not limited to, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customers lists, permits and franchises, and the right to use Debtor's name.

together with all substitutions and replacements for and products of any of the foregoing property not constituting consumer goods and together with proceeds of any and all of the foregoing property and, in the case of all tangible Collateral, together with all accessions and, except in the case of

consumer goods, together with (i) all accessories, attachments, parts, equipment and repairs now or hereafter attached or affixed to or used in connection with any such goods, and (ii) all warehouse receipts, bills of lading and other documents of title now or hereafter covering such goods.

**2.** REPRESENTATIONS, WARRANTIES AND AGREEMENTS. DEBTOR REPRESENTS, WARRANTS AND AGREES THAT:

(a) DEBTOR IS ☐ AN INDIVIDUAL, ☐ A PARTNERSHIP, ☒ A CORPORATION AND, IF DEBTOR IS AN INDIVIDUAL, THE DEBTOR'S RESIDENCE IS AT THE ADDRESS OF DEBTOR SHOWN AT THE BEGINNING OF THIS AGREEMENT.

(B) THE COLLATERAL WILL BE USED PRIMARILY FOR ☐ PERSONAL, FAMILY OR HOUSEHOLD PURPOSES; ☐ FARMING OPERATIONS; ☒ BUSINESS PURPOSES.

(c) ☐ IF ANY PART OR ALL OF THE TANGIBLE COLLATERAL WILL BECOME SO RELATED TO PARTICULAR REAL ESTATE AS TO BECOME A FIXTURE, THE REAL ESTATE CONCERNED IS: _____

AND THE NAME OF THE RECORD OWNER IS: _____

(D) DEBTOR'S CHIEF EXECUTIVE OFFICE IS LOCATED AT _____
OR, IF LEFT BLANK, AT THE ADDRESS OF DEBTOR SHOWN AT THE BEGINNING OF THIS AGREEMENT.

**3.** MULTIPLE COPIES. THIS AGREEMENT MAY BE EXECUTED IN ANY NUMBER OF COUNTERPARTS, EACH OF WHICH SHALL BE DEEMED TO BE AN ORIGINAL, BUT ALL OF WHICH TOGETHER SHALL CONSTITUTE ONE INSTRUMENT OR AGREEMENT.

**4.** DEBTOR AGREES THAT DEFAULT UNDER THE TERMS OF ANY OF THE OBLIGATIONS LISTED UNDER PARAGRAPH 1, ABOVE, SHALL CONSTITUTE A DEFAULT UNDER ALL SUCH OBLIGATIONS.

**5.** SECURED PARTIES HERETO AGREE BETWEEN EACH OTHER, THAT EACH TAKES A SECURITY INTEREST WITH PRIORITY, *PARI PASSU,* WITH THE OTHER. UPON COLLECTION, PAYMENT OR THE EXERCISE OF ANY REMEDY AVAILABLE TO SUCH CREDITORS, INCLUDING FORECLOSURE AND LIQUIDATION OF THE COLLATERAL, EACH AGREES, *INTER SE,* TO DISTRIBUTE THE ASSETS, OR PROCEEDS THEREOF PRO RATA, BASED UPON THE AMOUNTS DUE TO THEM UNDER THE AGREEMENTS REFERRED TO IN PARAGRAPH (1) ABOVE.

**6.** THIS AGREEMENT MAY BE SIGNED IN DUPLICATE COUNTERPARTS, ALL OF WHICH SHALL CONSTITUTE ONE AND THE SAME DOCUMENT.

THIS AGREEMENT CONTAINS ADDITIONAL PROVISIONS SET FORTH BELOW,

ALL OF WHICH ARE MADE A PART HEREOF.

| SECURED PARTIES: | DEBTOR: |
|---|---|
| | TOOLING SCIENCE, INC. |
| *Brian Burley, an individual* | By: _____ |
| | Its: |
| *Dennis Vlasak, an individual* | |
| *Terry Back, an individual* | |

**ADDITIONAL PROVISIONS**

**7.** ADDITIONAL REPRESENTATIONS, WARRANTIES AND AGREEMENTS. **DEBTOR REPRESENTS, WARRANTS AND AGREES THAT:**

(A) EXCEPT AS TO SECURITY INTEREST OF RECORD, DEBTOR HAS (OR WILL HAVE AT THE TIME DEBTOR ACQUIRES RIGHTS IN COLLATERAL HEREAFTER ARISING) ABSOLUTE TITLE TO EACH TIME OF COLLATERAL FREE AND CLEAR OF ALL SECURITY INTERESTS, LIENS AND ENCUMBRANCES, EXCEPT THE SECURITY INTEREST, AND WILL DEFEND THE COLLATERAL AGAINST ALL CLAIMS OR DEMANDS OF ALL PERSONS OTHER THAN SECURED PARTY. DEBTOR WILL NOT SELL OR OTHERWISE DISPOSE OF THE COLLATERAL OR ANY INTEREST THEREIN WITHOUT THE PRIOR WRITTEN CONSENT OF SECURED PARTY, EXCEPT THAT, UNTIL THE OCCURRENCE OF AN EVENT OF DEFAULT AND THE REVOCATION BY SECURED PARTY OF DEBTOR'S RIGHT TO DO SO, DEBTOR MAY SELL ANY INVENTORY CONSTITUTING COLLATERAL TO BUYERS IN THE ORDINARY COURSE OF BUSINESS AND USE AND CONSUME ANY FARM PRODUCTS CONSTITUTING COLLATERAL IN DEBTOR'S FARMING OPERATIONS. IF DEBTOR IS A CORPORATION, THIS AGREEMENT HAS BEEN DULY AND VALIDLY AUTHORIZED BY ALL NECESSARY CORPORATE ACTION, AND, IF DEBTOR IS A PARTNERSHIP, THE PARTNER(S) EXECUTING THIS AGREEMENT HAS (HAVE) AUTHORITY TO ACT FOR THE PARTNERSHIP.

(B) DEBTOR WILL NOT PERMIT ANY TANGIBLE COLLATERAL TO BE LOCATED IN ANY STATE (AND, IF COUNTY FILING IS REQUIRED, IN ANY COUNTY) IN WHICH A FINANCING STATEMENT COVERING SUCH COLLATERAL IS REQUIRED TO BE, BUT HAS NOT IN FACT BEEN, FILED IN ORDER TO PERFECT THE SECURITY INTEREST.

(C) EACH RIGHT TO PAYMENT AND EACH INSTRUMENT, DOCUMENT, CHATTEL PAPER AND OTHER AGREEMENT CONSTITUTING OR EVIDENCING COLLATERAL IS (OR WILL BE WHEN ARISING OR ISSUED) THE VALID, GENUINE AND LEGALLY ENFORCEABLE OBLIGATION, SUBJECT TO NO

DEFENSE, SET-OFF OR COUNTERCLAIM (OTHER THAN THOSE ARISING IN THE ORDINARY COURSE OF BUSINESS) OF THE ACCOUNT DEBTOR OR OTHER OBLIGOR NAMED THEREIN OR IN DEBTOR'S RECORDS PERTAINING THERETO AS BEING OBLIGATED TO PAY SUCH OBLIGATION. DEBTOR WILL NEITHER AGREE TO ANY MATERIAL MODIFICATION OR AMENDMENT NOR AGREE TO ANY CANCELLATION OF ANY SUCH OBLIGATION WITHOUT SECURED PARTY'S PRIOR WRITTEN CONSENT, AND WILL NOT SUBORDINATE ANY SUCH RIGHT TO PAYMENT TO CLAIMS OF OTHER CREDITORS OF SUCH ACCOUNT DEBTOR OR OTHER OBLIGOR.

DEBTOR WILL (I) KEEP ALL TANGIBLE COLLATERAL IN GOOD REPAIR, WORKING ORDER AND CONDITION, NORMAL DEPRECIATION EXCEPTED, AND WILL, FROM TIME TO TIME, REPLACE ANY WORN, BROKEN OR DEFECTIVE PARTS THEREOF; (II) PROMPTLY PAY ALL TAXES AND OTHER GOVERNMENTAL CHARGES LEVIED OR ASSESSED UPON OR AGAINST ANY COLLATERAL OR UPON OR AGAINST THE CREATION, PERFECTION OR CONTINUANCE OF THE SECURITY INTEREST; (III) KEEP ALL COLLATERAL FREE AND CLEAR OF ALL SECURITY INTERESTS, LIENS AND ENCUMBRANCES EXCEPT THE SECURITY INTEREST; (IV) AT ALL REASONABLE TIMES, PERMIT SECURED PARTY OR ITS REPRESENTATIVES TO EXAMINE OR INSPECT ANY COLLATERAL, WHEREVER LOCATED, AND TO EXAMINE, INSPECT AND COPY DEBTOR'S BOOKS AND RECORDS PERTAINING TO THE COLLATERAL AND ITS BUSINESS AND FINANCIAL CONDITION AND TO SEND AND DISCUSS WITH ACCOUNT DEBTORS AND OTHER OBLIGORS REQUESTS FOR VERIFICATIONS OF AMOUNTS OWED TO DEBTOR; (V) KEEP ACCURATE AND COMPLETE RECORDS PERTAINING TO THE COLLATERAL AND PERTAINING TO DEBTOR'S BUSINESS AND FINANCIAL CONDITION AND SUBMIT TO SECURED PARTY SUCH PERIODIC REPORTS CONCERNING THE COLLATERAL AND DEBTOR'S BUSINESS AND FINANCIAL CONDITION AS SECURED PARTY MAY FROM TIME TO TIME REASONABLY REQUEST; (VI) PROMPTLY NOTIFY SECURED PARTY OF ANY LOSS OF OR MATERIAL DAMAGE TO ANY COLLATERAL OR OF ANY ADVERSE CHANGE, KNOWN TO DEBTOR, IN THE PROSPECT OF PAYMENT OF ANY SUMS DUE ON OR UNDER ANY INSTRUMENT, CHATTEL PAPER, OR ACCOUNT CONSTITUTING COLLATERAL; (VII) IF SECURED PARTY AT ANY TIME SO REQUESTS (WHETHER THE REQUEST IS MADE BEFORE OR AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT), PROMPTLY DELIVER TO SECURED PARTY ANY INSTRUMENT, DOCUMENT OR CHATTEL PAPER CONSTITUTING COLLATERAL, DULY ENDORSED OR ASSIGNED BY DEBTOR; (VIII) AT ALL TIMES KEEP ALL TANGIBLE COLLATERAL INSURED AGAINST RISKS OF FIRE (INCLUDING SO-CALLED EXTENDED COVERAGE), THEFT, COLLISION (IN CASE OF COLLATERAL CONSISTING OF MOTOR VEHICLES) AND SUCH OTHER RISKS AND IN SUCH AMOUNTS AS SECURED PARTY MAY REASONABLY REQUEST, WITH ANY LOSS PAYABLE TO SECURED PARTY TO THE EXTENT OF ITS INTEREST; (IX) FROM TIME TO TIME EXECUTE SUCH FINANCING STATEMENTS AS SECURED PARTY MAY REASONABLY REQUIRE IN ORDER TO PERFECT THE SECURITY INTEREST AND, IF ANY COLLATERAL CONSISTS OF A MOTOR VEHICLE, EXECUTE SUCH DOCUMENTS AS MAY BE REQUIRED TO HAVE THE SECURITY INTEREST PROPERLY NOTED ON A CERTIFICATE OF TITLE; (X) PAY WHEN DUE OR REIMBURSE SECURED PARTY ON DEMAND FOR ALL COSTS OF COLLECTION OF ANY OF THE OBLIGATIONS AND ALL OTHER OUT-OF-POCKET EXPENSES (INCLUDING IN EACH CASE ALL REASONABLE ATTORNEYS' FEES) INCURRED BY SECURED PARTY IN CONNECTION WITH THE CREATION, PERFECTION, SATISFACTION, PROTECTION, DEFENSE OR ENFORCEMENT OF THE SECURITY INTEREST OR THE CREATION, CONTINUANCE, PROTECTION, DEFENSE OR ENFORCEMENT OF THIS AGREEMENT OR ANY OR ALL OF THE OBLIGATIONS, INCLUDING EXPENSES INCURRED IN ANY LITIGATION OR BANKRUPTCY OR INSOLVENCY PROCEEDINGS; (XI) EXECUTE, DELIVER OR ENDORSE ANY AND ALL INSTRUMENTS, DOCUMENTS, ASSIGNMENTS, SECURITY AGREEMENTS AND OTHER AGREEMENTS AND WRITINGS WHICH SECURED PARTY MAY AT ANY TIME REASONABLY REQUEST IN ORDER TO SECURE, PROTECT, PERFECT OR ENFORCE THE SECURITY INTEREST AND SECURED PARTY'S RIGHTS UNDER THIS AGREEMENT; (XII) NOT USE OR KEEP ANY COLLATERAL, OR PERMIT IT TO BE USED OR KEPT, FOR ANY UNLAWFUL PURPOSE OR IN VIOLATION OF ANY FEDERAL, STATE OR LOCAL LAW, STATUTE OR ORDINANCE; AND (XIII) NOT PERMIT ANY TANGIBLE COLLATERAL TO BECOME PART OF OR TO BE AFFIXED TO ANY REAL PROPERTY WITHOUT FIRST ASSURING TO THE REASONABLE SATISFACTION OF SECURED PARTY THAT THE SECURITY INTEREST WILL BE PRIOR AND SENIOR TO ANY INTEREST OR LIEN THEN HELD OR THEREAFTER ACQUIRED BY ANY MORTGAGEE OF SUCH REAL PROPERTY OR THE OWNER OR PURCHASER OF ANY INTEREST THEREIN. IF DEBTOR AT ANY TIME FAILS TO PERFORM OR OBSERVE ANY AGREEMENT CONTAINED IN THIS SECTION 3(D), AND IF SUCH FAILURE SHALL CONTINUE FOR A PERIOD OF TEN CALENDAR DAYS AFTER SECURED PARTY GIVES DEBTOR WRITTEN NOTICE THEREOF (OR, IN THE CASE OF THE AGREEMENTS CONTAINED IN CLAUSES (VIII) AND (IX) OF THIS SECTION 3(D), IMMEDIATELY UPON THE OCCURRENCE OF SUCH FAILURE, WITHOUT NOTICE OR LAPSE OF TIME), SECURED PARTY MAY (BUT NEED NOT) PERFORM OR OBSERVE SUCH AGREEMENT ON BEHALF AND IN THE NAME, PLACE AND STEAD OF DEBTOR (OR, AT SECURED PARTY'S OPTION, IN SECURED PARTY'S OWN NAME) AND MAY (BUT NEED NOT) TAKE ANY AND ALL OTHER ACTIONS WHICH SECURED PARTY MAY REASONABLY DEEM NECESSARY TO CURE OR CORRECT SUCH FAILURE (INCLUDING, WITHOUT LIMITATION, THE PAYMENT OF TAXES, THE SATISFACTION OF SECURITY INTERESTS, LIENS, OR ENCUMBRANCES, THE PERFORMANCE OF OBLIGATIONS UNDER CONTRACTS OR AGREEMENTS WITH ACCOUNT DEBTORS OR OTHER OBLIGORS, THE PROCUREMENT AND MAINTENANCE OF INSURANCE, THE EXECUTION OF FINANCING STATEMENTS, THE ENDORSEMENT OF INSTRUMENTS, AND THE PROCUREMENT OF REPAIRS, TRANSPORTATION OR INSURANCE); AND, EXCEPT TO THE EXTENT THAT THE EFFECT OF SUCH PAYMENT WOULD BE TO RENDER ANY LOAN OR FORBEARANCE OF MONEY USURIOUS OR OTHERWISE ILLEGAL UNDER ANY APPLICABLE LAW. DEBTOR SHALL THEREUPON PAY SECURED PARTY ON DEMAND THE AMOUNT OF ALL MONEYS EXPENDED AND ALL COSTS AND EXPENSES (INCLUDING REASONABLE ATTORNEYS' FEES) INCURRED BY SECURED PARTY IN CONNECTION WITH OR AS A RESULT OF SECURED PARTY'S PERFORMING OR OBSERVING SUCH AGREEMENTS OR TAKING SUCH ACTIONS, TOGETHER WITH INTEREST THEREON FROM THE DATE EXPENDED OR INCURRED BY SECURED PARTY AT THE HIGHEST RATE THEN APPLICABLE TO ANY OF THE OBLIGATIONS. TO FACILITATE THE PERFORMANCE OR OBSERVANCE BY SECURED PARTY OF SUCH AGREEMENTS OF DEBTOR, DEBTOR HEREBY IRREVOCABLY APPOINTS (WHICH APPOINTMENT IS COUPLED WITH AN INTEREST) SECURED PARTY, OR ITS DELEGATE, AS THE ATTORNEY-IN-FACT OF DEBTOR WITH THE RIGHT (BUT NOT THE DUTY) FROM TIME TO TIME TO CREATE, PREPARE, COMPLETE, EXECUTE, DELIVER, ENDORSE OR FILE, IN THE NAME AND ON BEHALF OF DEBTOR, ANY AND ALL INSTRUMENTS, DOCUMENTS, FINANCING STATEMENTS, APPLICATIONS FOR INSURANCE AND OTHER AGREEMENTS AND WRITINGS REQUIRED TO BE OBTAINED, EXECUTED, DELIVERED OR ENDORSED BY DEBTOR UNDER THIS SECTION 3 AND SECTION 4.

**8.**   LOCK BOX, COLLATERAL ACCOUNT.  IF SECURED PARTY SO REQUESTS AT ANY TIME (WHETHER BEFORE OR AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT), DEBTOR WILL DIRECT EACH OF ITS ACCOUNT DEBTORS TO MAKE PAYMENTS DUE UNDER THE RELEVANT ACCOUNT OR CHATTEL PAPER DIRECTLY TO A SPECIAL LOCK BOX TO BE UNDER THE CONTROL OF SECURED PARTY.  DEBTOR HEREBY AUTHORIZES AND DIRECTS SECURED PARTY TO DEPOSIT INTO A SPECIAL COLLATERAL ACCOUNT TO BE ESTABLISHED AND MAINTAINED WITH SECURED PARTY ALL CHECKS, DRAFTS AND CASH PAYMENTS RECEIVED IN SAID LOCK BOX.  ALL DEPOSITS IN SAID COLLATERAL ACCOUNT SHALL CONSTITUTE PROCEEDS OF COLLATERAL AND SHALL NOT CONSTITUTE PAYMENT OF ANY OBLIGATION.  AT ITS OPTION, SECURED PARTY MAY, AT ANY TIME, APPLY FINALLY COLLECTED FUNDS ON DEPOSIT IN SAID COLLATERAL ACCOUNT TO THE PAYMENT OF THE OBLIGATIONS IN SUCH ORDER OF APPLICATION AS SECURED PARTY MAY DETERMINE, OR PERMIT DEBTOR TO WITHDRAW ALL OR ANY PART OF THE BALANCE ON DEPOSIT IN SAID COLLATERAL ACCOUNT.  IF A COLLATERAL ACCOUNT IS SO ESTABLISHED, DEBTOR AGREES THAT IT WILL PROMPTLY DELIVER TO SECURED PARTY, FOR DEPOSIT INTO SAID COLLATERAL ACCOUNT, ALL PAYMENTS ON ACCOUNTS AND CHATTEL PAPER RECEIVED BY IT.  ALL SUCH PAYMENTS SHALL BE DELIVERED TO SECURED PARTY IN THE FORM RECEIVED (EXCEPT FOR DEBTOR'S ENDORSEMENT WHERE NECESSARY).  UNTIL SO DEPOSITED, ALL PAYMENTS ON ACCOUNTS AND CHATTEL PAPER RECEIVED BY DEBTOR SHALL BE HELD IN TRUST BY DEBTOR FOR AND AS THE PROPERTY OF SECURED PARTY AND SHALL NOT BE COMMINGLED WITH ANY FUNDS OR PROPERTY OF DEBTOR.

**9.**   ACCOUNT VERIFICATION AND COLLECTION RIGHTS OF SECURED PARTY.  SECURED PARTY SHALL HAVE THE RIGHT TO VERIFY ANY ACCOUNTS IN THE NAME OF DEBTOR OR IN ITS OWN NAME; AND DEBTOR, WHENEVER REQUESTED, SHALL FURNISH SECURED PARTY WITH DUPLICATE STATEMENTS OF THE ACCOUNTS, WHICH STATEMENTS MAY BE MAILED OR DELIVERED BY SECURED PARTY FOR THAT PURPOSE.  NOTWITHSTANDING SECURED PARTY'S RIGHTS UNDER SECTION 4 WITH RESPECT TO ANY AND ALL DEBT INSTRUMENTS, CHATTEL PAPERS, ACCOUNTS, AND OTHER RIGHTS TO PAYMENT CONSTITUTING COLLATERAL (INCLUDING PROCEEDS), SECURED PARTY MAY AT ANY TIME (BOTH BEFORE AND AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT) NOTIFY ANY ACCOUNT DEBTOR, OR ANY OTHER PERSON OBLIGATED TO PAY ANY AMOUNT DUE, THAT SUCH CHATTEL PAPER, ACCOUNT, OR OTHER RIGHT TO PAYMENT HAS BEEN ASSIGNED OR TRANSFERRED TO SECURED PARTY FOR SECURITY AND SHALL BE PAID DIRECTLY TO SECURED PARTY.  IF SECURED PARTY SO REQUESTS AT ANY TIME, DEBTOR WILL SO NOTIFY SUCH ACCOUNT DEBTORS AND OTHER OBLIGORS IN WRITING AND WILL INDICATE ON ALL INVOICES TO SUCH ACCOUNT DEBTORS OR OTHER OBLIGORS THAT THE AMOUNT DUE IS PAYABLE DIRECTLY TO SECURED PARTY.  AT ANY TIME AFTER SECURED PARTY OR DEBTOR GIVES SUCH NOTICE TO AN ACCOUNT DEBTOR OR OTHER OBLIGOR, SECURED PARTY MAY (BUT NEED NOT), IN ITS OWN NAME OR IN DEBTOR'S NAME, DEMAND, SUE FOR, COLLECT OR RECEIVE ANY MONEY OR PROPERTY AT ANY TIME PAYABLE OR RECEIVABLE ON ACCOUNT OF, OR SECURING, ANY SUCH CHATTEL PAPER, ACCOUNT, OR OTHER RIGHT TO PAYMENT, OR GRANT ANY EXTENSION TO, MAKE ANY COMPROMISE OR SETTLEMENT WITH OR OTHERWISE AGREE TO WAIVE, MODIFY, AMEND OR CHANGE THE OBLIGATIONS (INCLUDING COLLATERAL OBLIGATIONS) OF ANY SUCH ACCOUNT DEBTOR OR OTHER OBLIGOR.

**10.**   ASSIGNMENT OF INSURANCE.  DEBTOR HEREBY ASSIGNS TO SECURED PARTY, AS ADDITIONAL SECURITY FOR THE PAYMENT OF THE OBLIGATIONS, ANY AND ALL MONEYS (INCLUDING BUT NOT LIMITED TO PROCEEDS OF INSURANCE AND REFUNDS OF UNEARNED PREMIUMS) DUE OR TO BECOME DUE UNDER, AND ALL OTHER RIGHTS OF DEBTOR UNDER OR WITH RESPECT TO, ANY AND ALL POLICIES OF INSURANCE COVERING THE COLLATERAL, AND DEBTOR HEREBY DIRECTS THE ISSUER OF ANY SUCH POLICY TO PAY ANY SUCH MONEYS DIRECTLY TO SECURED PARTY.  BOTH BEFORE AND AFTER THE OCCURRENCE OF AN EVENT OF DEFAULT, SECURED PARTY MAY (BUT NEED NOT), IN ITS OWN NAME OR IN DEBTOR'S NAME, EXECUTE AND DELIVER PROOFS OF CLAIM, RECEIVE ALL SUCH MONEYS, INDORSE CHECKS AND OTHER INSTRUMENTS REPRESENTING PAYMENT OF SUCH MONEYS, AND ADJUST, LITIGATE, COMPROMISE OR RELEASE ANY CLAIM AGAINST THE ISSUER OF ANY SUCH POLICY.

**11.**   EVENTS OF DEFAULT.  EACH OF THE FOLLOWING OCCURRENCES SHALL CONSTITUTE AN EVENT OF DEFAULT UNDER THIS AGREEMENT (HEREIN CALLED "EVENT OF DEFAULT"): (I) DEBTOR SHALL FAIL TO PAY ANY OR ALL OF THE OBLIGATIONS WHEN DUE OR (IF PAYABLE ON DEMAND) ON DEMAND, SHALL FAIL TO OBSERVE OR PERFORM ANY COVENANT OR AGREEMENT HEREIN BINDING ON IT OR SHALL BE IN DEFAULT UNDER ANY LOAN OR CREDIT AGREEMENT BETWEEN IT AND THE SECURED PARTY; (II) ANY REPRESENTATION OR WARRANTY BY DEBTOR SET FORTH IN THIS AGREEMENT OR MADE TO SECURED PARTY IN ANY FINANCIAL STATEMENTS OR REPORTS SUBMITTED TO SECURED PARTY BY OR ON BEHALF OF DEBTOR SHALL PROVE MATERIALLY FALSE OR MISLEADING; (III) A GARNISHMENT, SUMMONS OR A WRIT OF ATTACHMENT SHALL BE ISSUED AGAINST OR SERVED UPON THE SECURED PARTY FOR THE ATTACHMENT OF ANY PROPERTY OF THE DEBTOR OR ANY INDEBTEDNESS OWING TO DEBTOR; (IV) DEBTOR OR ANY GUARANTOR OF ANY OBLIGATION SHALL (A) BE OR BECOME INSOLVENT (HOWEVER DEFINED); OR (B) VOLUNTARILY FILE, OR HAVE FILED AGAINST IT INVOLUNTARILY, A PETITION UNDER THE UNITED STATES BANKRUPTCY CODE; OR (C) IF A CORPORATION, PARTNERSHIP, OR ORGANIZATION, BE DISSOLVED OR LIQUIDATED OR, IF A PARTNERSHIP, SUFFER THE DEATH OF A PARTNER OR, IF AN INDIVIDUAL, DIE; OR (D) GO OUT OF BUSINESS; OR (IV) SECURED PARTY SHALL IN GOOD FAITH BELIEVE THAT THE PROSPECT OF DUE AND PUNCTUAL PAYMENT OF ANY OR ALL OF THE OBLIGATIONS IS IMPAIRED.

**12.**   REMEDIES UPON EVENT OF DEFAULT.  UPON THE OCCURRENCE OF AN EVENT OF DEFAULT UNDER SECTION 7 AND AT ANY TIME THEREAFTER, SECURED PARTY MAY EXERCISE ANY ONE OR MORE OF THE FOLLOWING RIGHTS AND REMEDIES; (I) DECLARE ALL UNMATURED OBLIGATIONS TO BE IMMEDIATELY DUE AND PAYABLE, AND THE SAME SHALL THEREUPON BE IMMEDIATELY DUE AND PAYABLE, WITHOUT PRESENTMENT OR OTHER NOTICE OR DEMAND; (II) EXERCISE AND ENFORCE ANY OR ALL RIGHTS AND REMEDIES AVAILABLE UPON DEFAULT TO A SECURED PARTY UNDER THE UNIFORM COMMERCIAL CODE, INCLUDING BUT NOT LIMITED TO THE RIGHT TO TAKE POSSESSION OF ANY COLLATERAL, PROCEEDING WITHOUT JUDICIAL PROCESS OR BY JUDICIAL PROCESS (WITHOUT A PRIOR HEARING OR NOTICE THEREOF, WHICH DEBTOR HEREBY EXPRESSLY WAIVES), AND THE RIGHT TO SELL, LEASE OR OTHERWISE DISPOSE OF ANY OR ALL OF THE COLLATERAL, AND IN CONNECTION THEREWITH, SECURED PARTY MAY REQUIRE DEBTOR TO MAKE THE COLLATERAL AVAILABLE TO SECURED PARTY AT A PLACE TO BE DESIGNATED BY SECURED PARTY WHICH IS REASONABLY CONVENIENT TO BOTH PARTIES, AND IF NOTICE TO DEBTOR OF ANY INTENDED DISPOSITION OF COLLATERAL OR ANY OTHER INTENDED ACTION IS REQUIRED BY LAW IN A PARTICULAR INSTANCE, SUCH NOTICE SHALL BE DEEMED COMMERCIALLY REASONABLE IF GIVEN (IN THE MANNER SPECIFIED IN SECTION 10) AT LEAST 10 CALENDAR DAYS PRIOR TO THE DATE OF INTENDED DISPOSITION OR OTHER ACTION; (III) EXERCISE OR ENFORCE ANY OR ALL OTHER RIGHTS OR REMEDIES AVAILABLE TO SECURED PARTY BY LAW OR AGREEMENT AGAINST THE COLLATERAL, AGAINST DEBTOR OR AGAINST ANY OTHER PERSON OR PROPERTY.  UPON THE OCCURRENCE OF THE EVENT OF DEFAULT DESCRIBED IN SECTION 7(IV)(B), ALL OBLIGATIONS SHALL BE IMMEDIATELY DUE AND PAYABLE WITHOUT DEMAND OR NOTICE THEREOF.  SECURED PARTY IS HEREBY GRANTED A NONEXCLUSIVE, WORLDWIDE AND ROYALTY-FREE LICENSE TO USE OR OTHERWISE EXPLOIT ALL TRADEMARKS, TRADE SECRETS, FRANCHISES, COPYRIGHTS AND PATENTS OF DEBTOR THAT SECURED PARTY DEEMS NECESSARY OR APPROPRIATE TO THE DISPOSITION OF ANY COLLATERAL.

**13.**   OTHER PERSONAL PROPERTY.  UNLESS AT THE TIME SECURED PARTY TAKES POSSESSION OF ANY TANGIBLE COLLATERAL, OR WITHIN SEVEN DAYS THEREAFTER, DEBTOR GIVES WRITTEN NOTICE TO SECURED PARTY OF THE EXISTENCE OF ANY GOODS, PAPERS OR OTHER PROPERTY OF DEBTOR, NOT AFFIXED TO OR CONSTITUTING A PART OF SUCH COLLATERAL, BUT WHICH ARE LOCATED OR FOUND UPON OR WITHIN SUCH COLLATERAL, DESCRIBING SUCH PROPERTY, SECURED PARTY SHALL NOT BE RESPONSIBLE OR LIABLE TO DEBTOR FOR ANY ACTION TAKEN OR OMITTED BY OR ON BEHALF OF SECURED PARTY WITH RESPECT TO SUCH PROPERTY WITHOUT ACTUAL KNOWLEDGE OF THE EXISTENCE OF ANY SUCH PROPERTY OR WITHOUT ACTUAL KNOWLEDGE THAT IT WAS LOCATED OR TO BE FOUND UPON OR WITHIN SUCH COLLATERAL.

**14.**   MISCELLANEOUS.  THIS AGREEMENT DOES NOT CONTEMPLATE A SALE OF ACCOUNTS, OR CHATTEL PAPER.  DEBTOR AGREES THAT EACH PROVISION WHOSE BOX IS CHECKED IS PART OF THIS AGREEMENT.  THIS AGREEMENT CAN BE WAIVED, MODIFIED, AMENDED, TERMINATED OR DISCHARGED, AND THE SECURITY INTEREST CAN BE RELEASED, ONLY EXPLICITLY IN A WRITING SIGNED BY SECURED PARTY.  A WAIVER SIGNED BY SECURED PARTY SHALL BE EFFECTIVE ONLY IN THE SPECIFIC INSTANCE AND FOR THE SPECIFIC PURPOSE GIVEN.  MERE DELAY OR FAILURE TO ACT SHALL NOT PRECLUDE THE EXERCISE OR ENFORCEMENT OF ANY OF SECURED PARTY'S RIGHTS OR REMEDIES.  ALL RIGHTS AND REMEDIES OF SECURED PARTY SHALL BE CUMULATIVE AND MAY BE EXERCISED SINGULARLY OR CONCURRENTLY, AT SECURED PARTY'S OPTION, AND THE EXERCISE OR ENFORCEMENT OF ANY ONE SUCH RIGHT OR REMEDY SHALL NEITHER BE A CONDITION TO NOR BAR THE EXERCISE OR ENFORCEMENT OF ANY OTHER.  ALL NOTICES TO BE GIVEN TO DEBTOR SHALL BE DEEMED SUFFICIENTLY GIVEN IF DELIVERED OR MAILED BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO DEBTOR AT ITS ADDRESS SET FORTH ABOVE OR AT THE MOST RECENT ADDRESS SHOWN ON SECURED PARTY'S RECORDS.  SECURED PARTY'S DUTY OF CARE WITH RESPECT TO COLLATERAL IN ITS POSSESSION (AS IMPOSED BY LAW) SHALL BE DEEMED FULFILLED IF SECURED PARTY EXERCISES REASONABLE CARE IN PHYSICALLY SAFEKEEPING SUCH COLLATERAL OR, IN THE CASE OF COLLATERAL IN THE CUSTODY OR POSSESSION OF A BAILEE OR OTHER THIRD PERSON, EXERCISES REASONABLE CARE IN THE SELECTION OF THE BAILEE OR OTHER THIRD PERSON, AND SECURED PARTY NEED NOT OTHERWISE PRESERVE, PROTECT, INSURE OR CARE FOR ANY COLLATERAL.  SECURED PARTY SHALL NOT BE OBLIGATED TO PRESERVE ANY RIGHTS DEBTOR MAY HAVE AGAINST PRIOR PARTIES, TO REALIZE ON THE COLLATERAL AT ALL, OR IN ANY PARTICULAR MANNER OR ORDER, OR TO APPLY ANY CASH PROCEEDS OF COLLATERAL IN ANY PARTICULAR ORDER OF APPLICATION.  THIS AGREEMENT SHALL BE BINDING UPON AND INURE TO THE BENEFIT OF DEBTOR AND SECURED PARTY AND THEIR RESPECTIVE HEIRS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS AND SHALL TAKE EFFECT WHEN SIGNED BY DEBTOR AND DELIVERED TO SECURED PARTY, AND DEBTOR WAIVES NOTICE OF SECURED PARTY'S ACCEPTANCE HEREOF.  SECURED PARTY MAY EXECUTE THIS AGREEMENT IF APPROPRIATE FOR THE PURPOSE OF FILING, BUT THE FAILURE OF SECURED PARTY TO EXECUTE THIS AGREEMENT SHALL NOT AFFECT OR IMPAIR THE VALIDITY OR EFFECTIVENESS OF THIS AGREEMENT.  A CARBON, PHOTOGRAPHIC OR OTHER REPRODUCTION OF THIS AGREEMENT OR OF ANY FINANCING STATEMENT SIGNED BY THE DEBTOR SHALL HAVE THE SAME FORCE AND EFFECTS AS THE

ORIGINAL FOR ALL PURPOSES OF A FINANCING STATEMENT. THIS AGREEMENT SHALL BE GOVERNED BY THE INTERNAL LAWS OF THE STATE WHERE THE MAIN OFFICE OF THE SECURED PARTY IS LOCATED. IF ANY PROVISION OR APPLICATION OF THIS AGREEMENT IS HELD UNLAWFUL OR UNENFORCEABLE IN ANY RESPECT, SUCH ILLEGALITY OR UNENFORCEABILITY SHALL NOT AFFECT OTHER PROVISIONS OR APPLICATIONS WHICH CAN BE GIVEN EFFECT AND THIS AGREEMENT SHALL BE CONSTRUED AS IF THE UNLAWFUL OR UNENFORCEABLE PROVISION OR APPLICATION HAD NEVER BEEN CONTAINED HEREIN OR PRESCRIBED HEREBY. ALL REPRESENTATIONS AND WARRANTIES CONTAINED IN THIS AGREEMENT SHALL SURVIVE THE EXECUTION, DELIVERY AND PERFORMANCE OF THIS AGREEMENT AND THE CREATION AND PAYMENT OF THE OBLIGATIONS. IF THIS AGREEMENT IS SIGNED BY MORE THAN ONE PERSON AS DEBTOR, THE TERM "DEBTOR" SHALL REFER TO EACH OF THEM SEPARATELY AND TO BOTH OR ALL OF THEM JOINTLY; ALL SUCH PERSONS SHALL BE BOUND BOTH SEVERALLY AND JOINTLY WITH THE OTHER(S); AND THE OBLIGATIONS SHALL INCLUDE ALL DEBTS, LIABILITIES AND OBLIGATIONS OWED TO SECURED PARTY BY ANY DEBTOR SOLELY OR BY BOTH OR SEVERAL OR ALL DEBTORS JOINTLY OR JOINTLY AND SEVERALLY, AND ALL PROPERTY DESCRIBED IN SECTION 1 SHALL BE INCLUDED AS PART OF THE COLLATERAL, WHETHER IT IS OWNED JOINTLY BY BOTH OR ALL DEBTORS OR IS OWNED IN WHOLE OR IN PART BY ONE (OR MORE) OF THEM.

4820-4517-7394, v. 1

**EXHIBIT B**

$100,000.00

Maple Grove, Minnesota
June 15, 2016

SECURED
REVOLVING DEMAND
PROMISSORY NOTE

FOR VALUE RECEIVED, Tooling Science, Inc., a Minnesota corporation ("Maker"), hereby promises to pay to the order of Dennis Vlasak, an individual and resident of the State of Minnesota ("Payee"), at Maple Grove, Minnesota, or at such other place as may be designated from time to time by the Payee, the principal sum of One Hundred Thousand Dollars ($100,000.00), or the aggregate amount of all advances, whichever is less, together with interest at the rate of three and one-half percent (3.5%) per annum on the unpaid principal balance outstanding from time to time, commencing on the above date, until the advances made hereunder, as evidenced by the books and records of the Payee, are fully paid. The holder of this Note may at any time, at his or its option, make demand and declare this Note immediately due and payable, for the entire unpaid principal balance, together with accrued interest, or any portion thereof.

All payments on this Note shall be applied first to payment of attorneys' fees and costs, then to accrued interest and then to reduction of principal. Interest shall be computed on the basis of days elapsed in a 360 day year.

The term "Event of Default," as used herein, shall mean any one or more of the following events:

1.)     Failure of the Maker to pay any required payment of this Note, or

2.)     Any default by the Maker under the terms of this Note, the terms of a Loan Agreement or Security Agreement, both dated of even date herewith, delivered by the Maker to the Payee, to, inter alia, secure payment of this Note.

In the event of the occurrence of any Event of Default, the Payee may declare the entire principal sum, together with accrued interest, immediately due and payable. Failure to exercise this option, however often, shall not constitute a waiver of the right to exercise it thereafter.

Maker hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and agrees to pay all costs of collection, including reasonable attorneys' fees, in case of any damages due to default, including any payment shall not be made as herein provided. This Note shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota.

TOOLING SCIENCE, INC.

By: _____

Its: _PRESIDENT_____

4819-8619-4994, v. 1

# LOAN AGREEMENT

THIS AGREEMENT, dated as of the 15th day of June 2016, between Tooling Science, Inc., a Minnesota corporation ("Borrower") and Dennis Vlasak ("Lender").

WHEREAS, Borrower is in need of a loan and may, from time to time, be in need of an immediate cash infusion for continuing operations and is in need of additional working capital; and

WHEREAS, Lender is willing to consider advancing a loan for sums to a maximum principal amount of $100,000.00, pursuant to the terms of this agreement, and related documents referred to herein (the "Loan").

NOW THEREFORE, the parties enter into the following agreement:

1. The foregoing recitals are hereby acknowledged as true and correct.

2. The Lender shall consider advancing to Borrower sums as may be requested by Borrower, of up to the principal amount of $100,000.00, from time to time.

3. That any such advances shall be subject to the terms of this agreement, a promissory note, security agreement, and UCC-1 of even date herewith (hereinafter "Loan Documents").

4. At the request of Borrower, the Lender agrees to make such loans to Borrower (each such loan being herein called an "Advance" and collectively "Advances") provided, however, Lender shall have the absolute right, discretion and authority to decide whether or not to make such Advances, and shall not be obligated to make such Advances. The amount of any such Advance shall be recorded on the books and records of Lender, and such record shall constitute proof of such Advance, and shall be admissible in evidence on such issue.

5. This loan agreement shall be terminated upon the earlier of: (1) the occurrence of any material breach of its terms by Borrower, including a breach of any of the terms of the associated Loan Documents.

6. This agreement shall be binding upon Borrower and Lender, their respective successors, assigns and heirs, and shall inure to the benefit of Borrower, Lender and their respective successors, assigns and heirs except that Borrower may not assign or transfer its rights hereunder without the prior written consent of Lender, which consent can be withheld or granted, in Lender's absolute discretion.

7. This agreement shall be governed by and interpreted in accordance with internal laws in the State of Minnesota, without regard to conflict of laws.

8. This document (including the associated Loan Documents) sets forth the entire agreement between the parties, and there are no other agreements or understandings between them, related to this New Loan.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first above written.

BORROWER:                                    LENDER:

TOOLING SCIENCE, INC.

By: _____        _____
Its: _____        Dennis Vlasak

<u>Resolution Authorizing Borrowing of Money from a</u>
<u>Director, Officer and Shareholder, and Issuance of Secured Promissory Note</u>
<u>and Related Documents</u>

WHEREAS, the undersigned, consisting of all the members of the Board of Directors and shareholders of Tooling Science, Inc. (the "Corporation"), recognizing a need for additional working capital and operating funds, from time to time, desires to borrow the sum of up to the principal amount of $100,000.00, from Dennis Vlasak, a shareholder and officer of the Corporation, and a member of the Board of Directors (collectively, the "Lender").

WHEREAS, the Lender has offered to loan to the Corporation the sum of up to the principal amount of $100,000.00 pursuant to the terms and conditions of a Loan Agreement, Secured Revolving Demand Promissory Note and Security Agreement and UCC-1 (collectively the "Loan Documents"). That entering into such agreement is in the best interests of the Corporation. That the terms of such Loan are more favorable (or, at the least equal) to the terms the Corporation could receive from any other lending source;

RESOLVED, that the appropriate officer of the Corporation is hereby authorized and directed to enter into the loan and associated documents, including a Promissory Note and Security Agreement, payable to the Lender in the maximum principal sum of up to $100,000.00.

THE BOARD:                              THE SHAREHOLDERS:

IN FAVOR:                               IN FAVOR:

_____                 _____
Edwin Kelly                             Edwin Kelly

_____                 _____
Brian Burley                            Brian Burley

_____                 _____
Terry Back                              Terry Back


ABSTAIN:                                AGAINST:

_____                 NONE
Dennis Vlasak


Dated: June 15, 2016

4819-8619-4994, v. 1

# EXHIBIT C

$50,000.00

Maple Grove, Minnesota<br>June 15, 2016

SECURED
REVOLVING DEMAND
PROMISSORY NOTE

FOR VALUE RECEIVED, Tooling Science, Inc., a Minnesota corporation ("Maker"), hereby promises to pay to the order of Brian Burley, an individual and resident of the State of Minnesota ("Payee"), at Maple Grove, Minnesota, or at such other place as may be designated from time to time by the Payee, the principal sum of Fifty Thousand Dollars ($50,000.00), or the aggregate amount of all advances, whichever is less, together with interest at the rate of three and one-half percent (3.5%) per annum on the unpaid principal balance outstanding from time to time, commencing on the above date, until the advances made hereunder, as evidenced by the books and records of the Payee, are fully paid. The holder of this Note may at any time, at his or its option, make demand and declare this Note immediately due and payable, for the entire unpaid principal balance, together with accrued interest, or any portion thereof.

All payments on this Note shall be applied first to payment of attorneys' fees and costs, then to accrued interest and then to reduction of principal. Interest shall be computed on the basis of days elapsed in a 360 day year.

The term "Event of Default," as used herein, shall mean any one or more of the following events:

1.) Failure of the Maker to pay any required payment of this Note, or

2.) Any default by the Maker under the terms of this Note, the terms of a Loan Agreement or Security Agreement, both dated of even date herewith, delivered by the Maker to the Payee, to, inter alia, secure payment of this Note.

In the event of the occurrence of any Event of Default, the Payee may declare the entire principal sum, together with accrued interest, immediately due and payable. Failure to exercise this option, however often, shall not constitute a waiver of the right to exercise it thereafter.

Maker hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and agrees to pay all costs of collection, including reasonable attorneys' fees, in case of any damages due to default, including any payment shall not be made as herein provided. This Note shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota.

TOOLING SCIENCE, INC.

By: _____

Its: _____

# Resolution Authorizing Borrowing of Money from a
## Director, Officer and Shareholder, and Issuance of Secured Promissory Note
### and Related Documents

WHEREAS, the undersigned, consisting of all the members of the Board of Directors and shareholders of Tooling Science, Inc. (the "Corporation"), recognizing a need for additional working capital and operating funds, from time to time, desires to borrow the sum of up to the principal amount of $50,000.00, from Brian Burley, a shareholder and officer of the Corporation, and a member of the Board of Directors (collectively, the "Lender").

WHEREAS, the Lender has offered to loan to the Corporation the sum of up to the principal amount of $50,000.00 pursuant to the terms and conditions of a Loan Agreement, Secured Revolving Demand Promissory Note and Security Agreement and UCC-1 (collectively the "Loan Documents"). That entering into such agreement is in the best interests of the Corporation. That the terms of such Loan are more favorable (or, at the least equal) to the terms the Corporation could receive from any other lending source;

RESOLVED, that the appropriate officer of the Corporation is hereby authorized and directed to enter into the loan and associated documents, including a Promissory Note and Security Agreement, payable to the Lender in the maximum principal sum of up to $50,000.00.

THE BOARD:                                      THE SHAREHOLDERS:

IN FAVOR:                                       IN FAVOR:

_____                         _____
Edwin Kelly                                     Edwin Kelly

_____                         _____
Terry Back                                      Terry Back

_____                         _____
Dennis Vlasak                                   Dennis Vlasak

ABSTAIN:                                        AGAINST:

_____
Brian Burley                                    NONE

Dated:  June 15, 2016

4848-5162-5522, v. 1

# LOAN AGREEMENT

THIS AGREEMENT, dated as of the 15th day of June 2016, between Tooling Science, Inc., a Minnesota corporation ("Borrower") and Brian Burley ("Lender").

WHEREAS, Borrower is in need of a loan and may, from time to time, be in need of an immediate cash infusion for continuing operations and is in need of additional working capital; and

WHEREAS, Lender is willing to consider advancing a loan for sums to a maximum principal amount of $50,000.00, pursuant to the terms of this agreement, and related documents referred to herein (the "Loan").

NOW THEREFORE, the parties enter into the following agreement:

1. The foregoing recitals are hereby acknowledged as true and correct.

2. The Lender shall consider advancing to Borrower sums as may be requested by Borrower, of up to the principal amount of $50,000.00, from time to time.

3. That any such advances shall be subject to the terms of this agreement, a promissory note, security agreement, and UCC-1 of even date herewith (hereinafter "Loan Documents").

4. At the request of Borrower, the Lender agrees to make such loans to Borrower (each such loan being herein called an "Advance" and collectively "Advances") provided, however, Lender shall have the absolute right, discretion and authority to decide whether or not to make such Advances, and shall not be obligated to make such Advances. The amount of any such Advance shall be recorded on the books and records of Lender, and such record shall constitute proof of such Advance, and shall be admissible in evidence on such issue.

5. This loan agreement shall be terminated upon the earlier of: (1) the occurrence of any material breach of its terms by Borrower, including a breach of any of the terms of the associated Loan Documents.

6. This agreement shall be binding upon Borrower and Lender, their respective successors, assigns and heirs, and shall inure to the benefit of Borrower, Lender and their respective successors, assigns and heirs except that Borrower may not assign or transfer its rights hereunder without the prior written consent of Lender, which consent can be withheld or granted, in Lender's absolute discretion.

7. This agreement shall be governed by and interpreted in accordance with internal laws in the State of Minnesota, without regard to conflict of laws.

8. This document (including the associated Loan Documents) sets forth the entire agreement between the parties, and there are no other agreements or understandings between them, related to this New Loan.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first above written.

BORROWER:                                            LENDER:

TOOLING SCIENCE, INC.

By: _____                          _____

Its: _____                          Brian Burley

4848-5162-5522, V. 1

# EXHIBIT D

$50,000.00

Maple Grove, Minnesota
June 15, 2016

## SECURED
## REVOLVING DEMAND
## PROMISSORY NOTE

FOR VALUE RECEIVED, Tooling Science, Inc., a Minnesota corporation ("Maker"), hereby promises to pay to the order of Terry Back, an individual and resident of the State of Minnesota ("Payee"), at Maple Grove, Minnesota, or at such other place as may be designated from time to time by the Payee, the principal sum of Fifty Thousand Dollars ($50,000.00), or the aggregate amount of all advances, whichever is less, together with interest at the rate of three and one-half percent (3.5%) per annum on the unpaid principal balance outstanding from time to time, commencing on the above date, until the advances made hereunder, as evidenced by the books and records of the Payee, are fully paid. The holder of this Note may at any time, at his or its option, make demand and declare this Note immediately due and payable, for the entire unpaid principal balance, together with accrued interest, or any portion thereof.

All payments on this Note shall be applied first to payment of attorneys' fees and costs, then to accrued interest and then to reduction of principal. Interest shall be computed on the basis of days elapsed in a 360 day year.

The term "Event of Default," as used herein, shall mean any one or more of the following events:

1.)     Failure of the Maker to pay any required payment of this Note, or

2.)     Any default by the Maker under the terms of this Note, the terms of a Loan Agreement or Security Agreement, both dated of even date herewith, delivered by the Maker to the Payee, to, inter alia, secure payment of this Note.

In the event of the occurrence of any Event of Default, the Payee may declare the entire principal sum, together with accrued interest, immediately due and payable. Failure to exercise this option, however often, shall not constitute a waiver of the right to exercise it thereafter.

Maker hereby waives presentment, demand for payment, notice of dishonor, notice of protest, and protest, and agrees to pay all costs of collection, including reasonable attorneys' fees, in case of any damages due to default, including any payment shall not be made as herein provided. This Note shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota.

TOOLING SCIENCE, INC.

By: _Brian C Back_____

Its: _President_____

4837-1424-8242, v. 1

<u>Resolution Authorizing Borrowing of Money from a
Director, Officer and Shareholder, and Issuance of Secured Promissory Note
and Related Documents</u>

WHEREAS, the undersigned, consisting of all the members of the Board of Directors and shareholders of Tooling Science, Inc. (the "Corporation"), recognizing a need for additional working capital and operating funds, from time to time, desires to borrow the sum of up to the principal amount of $50,000.00, from Terry Back, a shareholder and officer of the Corporation, and a member of the Board of Directors (collectively, the "Lender").

WHEREAS, the Lender has offered to loan to the Corporation the sum of up to the principal amount of $50,000.00 pursuant to the terms and conditions of a Loan Agreement, Secured Revolving Demand Promissory Note and Security Agreement and UCC-1 (collectively the "Loan Documents"). That entering into such agreement is in the best interests of the Corporation. That the terms of such Loan are more favorable (or, at the least equal) to the terms the Corporation could receive from any other lending source;

RESOLVED, that the appropriate officer of the Corporation is hereby authorized and directed to enter into the loan and associated documents, including a Promissory Note and Security Agreement, payable to the Lender in the maximum principal sum of up to $50,000.00.

THE BOARD:                              THE SHAREHOLDERS:

IN FAVOR:                               IN FAVOR:

_____        _____
Edwin Kelly                            Edwin Kelly

_____        _____
Brian Burley                           Brian Burley

_____        _____
Dennis Vlasak                          Dennis Vlasak


ABSTAIN:                                AGAINST:

_____        NONE
Terry Back



Dated:  June 15, 2016

4837-1424-8242, v. 1

# LOAN AGREEMENT

THIS AGREEMENT, dated as of the 15th day of June 2016, between Tooling Science, Inc., a Minnesota corporation ("Borrower") and Terry Back ("Lender").

WHEREAS, Borrower is in need of a loan and may, from time to time, be in need of an immediate cash infusion for continuing operations and is in need of additional working capital; and

WHEREAS, Lender is willing to consider advancing a loan for sums to a maximum principal amount of $50,000.00, pursuant to the terms of this agreement, and related documents referred to herein (the "Loan").

NOW THEREFORE, the parties enter into the following agreement:

1. The foregoing recitals are hereby acknowledged as true and correct.

2. The Lender shall consider advancing to Borrower sums as may be requested by Borrower, of up to the principal amount of $50,000.00, from time to time.

3. That any such advances shall be subject to the terms of this agreement, a promissory note, security agreement, and UCC-1 of even date herewith (hereinafter "Loan Documents").

4. At the request of Borrower, the Lender agrees to make such loans to Borrower (each such loan being herein called an "Advance" and collectively "Advances") provided, however, Lender shall have the absolute right, discretion and authority to decide whether or not to make such Advances, and shall not be obligated to make such Advances. The amount of any such Advance shall be recorded on the books and records of Lender, and such record shall constitute proof of such Advance, and shall be admissible in evidence on such issue.

5. This loan agreement shall be terminated upon the earlier of: (1) the occurrence of any material breach of its terms by Borrower, including a breach of any of the terms of the associated Loan Documents.

6. This agreement shall be binding upon Borrower and Lender, their respective successors, assigns and heirs, and shall inure to the benefit of Borrower, Lender and their respective successors, assigns and heirs except that Borrower may not assign or transfer its rights hereunder without the prior written consent of Lender, which consent can be withheld or granted, in Lender's absolute discretion.

7. This agreement shall be governed by and interpreted in accordance with internal laws in the State of Minnesota, without regard to conflict of laws.

8. This document (including the associated Loan Documents) sets forth the entire agreement between the parties, and there are no other agreements or understandings between them, related to this New Loan.

IN WITNESS WHEREOF, the parties have executed this agreement as of the date first above written.

BORROWER:                         LENDER:

TOOLING SCIENCE, INC.

By: _____        _____
Its: _____        Terry Back

# EXHIBIT E

**TOOLING SCIENCE, INC.**
**SHAREHOLDER SECURED LENDING**

| DESCRIPTION | 7/1/2016 | 7/8/2016 | 7/15/2016 | 7/22/2016 | 7/29/2016 | PROJECTIONS | |
|---|---|---|---|---|---|---|---|
| **CASH SOURCES** | | | | | | | |
| Shareholder Loans | | 50,000 | | 50,000 | 50,000 | $ | 150,000 |
| | | | | | | $ | - |
| **TOTAL CASH SOURCES** | | 50,000 | - | 50,000 | 50,000 | $ | 150,000 |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - –

In re:                                             Bky. No. 16-41999
                                                   Chapter 11 Case
Tooling Science, Inc.

                            Debtor.                **MEMORANDUM OF LAW IN
                                                   SUPPORT OF MOTION FOR
                                                   EXPEDITED RELIEF AND FOR AN
                                                   ORDER APPROVING POST-
                                                   PETITION SECURED LOAN**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## INTRODUCTION

This Memorandum is submitted in support of the Debtor's Motion for Expedited Relief

and for an Order approving Post-Petition Secured Loan (the "Motion"). The facts supporting the

relief sought are set forth in the verified Motion.

## ARGUMENT

I.     **The Debtor Should be Permitted to Enter Into Post-Petition Secured Financing
       from the Secured Lender Parties**

The Debtor may obtain post-petition secured financing under Section 364 of the

Bankruptcy Code, provided it meets certain requirements. Specifically:

> (1) The court, after notice and a hearing, may authorize the
> obtaining of credit or the incurring of debt secured by a senior or
> equal lien on property of the estate that is subject to a lien only if—
>
> > (A) the trustee is unable to obtain such credit otherwise;
> > and
> >
> > (B) there is adequate protection of the interest of the holder
> > of the lien on the property of the estate on which such
> > senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden
> of proof on the issue of adequate protection.

11 U.S.C. § 364(d).

When determining whether to approve financing secured under sections 364(c) and (d) of the Bankruptcy Code, courts commonly considered four distinct factors:

1. whether the proposed financing represents an exercise of sound and reasonable business judgment;

2. whether alternative financing is available on any other basis;

3. whether the financing is in the best interests of the estate and its creditors; and

4. as a corollary to the first three points, whether any better offers, bids, or timely proposals are before the court.

*In re Farmland Indus., Inc.*, 294 B.R. 855, 879 (Bankr. W.D. Mo. 2003); *In re Phase-1 Molecular Toxicology, Inc.*, 285 B.R. 494, 495 (Bankr. D.N.M. 2002); *In re Western Pacific Airlines, Inc.*, 223 B.R. 567, 572 (Bankr. D. Colo. 1997). Bankruptcy courts have also considered factors such as whether (a) the proposed credit transaction is necessary to preserve the assets of the estate; and (b) the terms of the transaction are fair, reasonable and adequate, given the circumstances. *See In re The Crouse Group, Inc.*, 71 B.R. 544, 549 (Bankr. E.D. Pa. 1987), *accord In re Sky Valley, Inc.*, 100 B.R. 107, 112 (Bankr. N.D. Ga. 1988) (holding that debtor need not establish that postpetition loan secured under section 364(d) is necessary to the preservation of the debtor's estate). Here, the Debtor meets these factors.

### A. Borrowing under the Individual Secured Notes Represents a Sound and Reasonable Business Judgment

The value of the Debtor's estate arises from the Debtor's ability to maintain normal business operations during the early phases of and throughout this reorganization. To maintain operation, the Debtor requires financing. The Debtor has an immediate and ongoing need for capital by which to pay its expenses. These expenses include payroll, equipment, payroll taxes, payments to trade vendors, landlords, and utilities. If the Debtor fails to make such payments, the

Debtor will inevitably go out of business. The Debtor's failure would harm all creditors in this case, including the senior secured creditor and the unsecured creditors. Because the loans from the Secured Lender Parties will allow the Debtor to maintain operations, they represent the sound business judgment that will benefit the Debtor and the estate.

**B.     The Debtor Could Not Locate Alternative Financing on Any Other Basis**

Sections 364(c) and (d) require that a debtor demonstrate that it was unable to obtain credit otherwise. The courts have made clear that "[t]he statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *In re The Snowshoe Co., Inc.*, 789 F.2d 1085, 1088 (4th Cir. 1986). Here, the Debtor's need for immediate cash flow and the need for reorganization long-term mean that other lenders will not provide credit to the Debtor. Further, the Debtor's assets have already been pledged to the senior secured creditors as well as the Secured Lender Parties. Under these circumstances, the Debtor does not believe that an alternative to the Secured Lender Parties presently exists, and not under terms as favorable to the Debtor as are now being offered.

**C.     The Secured Lending is Necessary to Preserve the Estate**

The purpose of entering into these additional secured loans is to provide the Debtor with the cash flow necessary to maintain operations in the initial phases of reorganization. Where the purpose of a credit facility is to enable the debtor to maintain the value of its estates, the facility should be approved. *See In re Devlin*, 185 B.R. 376, 378 (Bankr. M.D. Fla. 1995) (allowing chapter 11 debtor to incur secured debt pursuant to 364(d)(1) to replace fixtures which would allow debtor's hotel to continue operations to the benefit of all creditors).

D.    **The Terms of the Individual Secured Notes are Fair and Reasonable**

Finally, the terms of the Individual Secured Notes are fair and reasonable. They provide for a second-position blanket lien on the Debtor's assets and a rate of interest that is fair and commercially reasonable under the circumstances.

E.    **MidwestOne Bank is Adequately Protected**

Finally, Section 364(d) requires the Court to find that the interests of superior secured creditors are adequately protected. The Eighth Circuit Court of Appeals has stated that:

> In any given case, the Bankruptcy Court must necessarily (1) establish the value of the secured creditor's interest, (2) identify the risk to the secured creditor's value resulting from the debtor's request for use of cash collateral, and (3) determine whether the debtor's adequate protection proposal protects values as nearly as possible against risk to that value consistent with the concept of indubitable equivalence.

*In re Martin*, 761 F.2d 472, 476-77 (8th Cir. 1985). Here, MidwestOne Bank's has a first-position blanket lien on all the Debtor's assets. The Debtor does not propose disturbing this order of priority. MidwestOne Bank will maintain first position priority—the Secured Lender Parties do not seek to "prime" their post-petition security interest. Second, there is no risk to MidwestOne Bank. The Debtor proposes to use the cash collateral to maintain its operations which inures to the benefit of the Bank and all creditors. Finally, *Martin* requires the Court to determine how the proposed use of cash collateral protects the secured creditor's interest relative to the risk. As set out more fully in the Debtor's motion for use of cash collateral, the Debtor will grant the Bank a replacement lien in the same types and items of collateral as was present at the commencement of this case. Such replacement liens would extend to post-petition assets of the estate. For these reasons the primary secured creditor is adequately protected. The Bank will remain in its first priority position.

## II.     EXPEDITED RELIEF IS APPROPRIATE

Bankruptcy Rule 4001(c) provides that a court may commence a final hearing for authority to enter into post-petition financing no earlier than 15 days after service of the motion. The rule further provides that a court may conduct a preliminary hearing before such 15-day period expires, but the court may authorize the obtaining of credit or use of cash collateral only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Local Rule 9006-1(d) permits a party to serve moving papers on shorter than 14 days' notice for cause.

In this case, grounds exist to reduce notice of the interim hearing to authorize post-petition on a preliminary basis pending the final hearing. The Debtor has an urgent need to use the Individual Lender's proposed post-petition financing to continue their operations uninterrupted. The Debtor must meet immediate obligations such as payroll, sales taxes, and payments to trade vendors, and utilities. The relief sought herein is designed to ease the Debtor's transition to chapter 11, and minimize disruptions to the Debtor's business operations. Given the Debtor's critical need to continue its operations uninterrupted, the Court should reduce notice of the hearing on this matter.

## <u>CONCLUSION</u>

As set forth above, the Debtor respectfully requests that the Court enter an order granting an expedited hearing, approving the Debtor's entry into a post-petition secured financing arrangement with the Secured Lender Parties, and obtaining post-petition financing on a final basis; and grant to the Secured Lender Parties a lien superior to any other lien or claim other than the liens of MidwestOne Bank.

Dated:  July 1, 2016                              */e/ Thomas J. Flynn*
                                           Thomas J. Flynn (30570)
                                           Richard J. Reding (389945)
                                           Larkin Hoffman Daly & Lindgren Ltd.
                                           8300 Norman Center Drive
                                           Suite 1000
                                           Minneapolis, Minnesota  55437-1060
                                           (952) 835-3800
                                           tflynn@larkinhoffman.com
                                           jreding@larkinhoffman.com

                                           Attorneys for Debtor

## VERIFICATION

    I, Brian Burley, the President of Tooling Science, Inc., the Debtor, who is the moving party named in the foregoing notice of hearing and motion, declare under penalty of perjury that the facts contained in the foregoing motion are true and correct according to the best of my knowledge, information and belief and that the facts set forth in the memorandum of law in support of the motion are similarly true and correct.

Executed on June 30, 2016          _____

                                 Brian Burley

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

------------------------------------ –

In re:                                        Bky. No. 16-41999
                                              Chapter 11 Case
Tooling Science, Inc.
                                              **CERTIFICATE OF SERVICE**
                              Debtor.

------------------------------------ -

      I, Thomas J. Flynn, under penalty of perjury, hereby declare that on July 1, 2016, in

connection with the above-referenced matter, the following documents:

1. Notice of Preliminary and Final Hearings and Motion for Expedited Relief and for an Order Approving Post-Petition Secured Loan;
2. Memorandum of Law in Support of Motion;
3. Exhibits A-E;
4. Verification of Brian Burley;
5. Certificate of Service; and
6. Interim Order for Expedited Relief and for an Order Approving Post-Petition Secured Loan Pending Final Hearing
7. Final Order Approving Post-Petition Secured Loan

were filed with the Clerk of Court via ECF, and served on the parties listed on the attached

service list by the means indicated.

Dated: July 1, 2016                    */e/ Thomas J. Flynn*_____
                                       Thomas J. Flynn

**Tooling Science, Inc.**
**Chapter 11 Bankruptcy**
**Case No. 16-41999**

**SERVICE LIST**

| | |
|---|---|
| Tooling Science, Inc.<br>Attn: Brian Burley, President<br>9424 Deerwood Lane N.<br>Maple Grove, MN 55369<br>VIA US MAIL AND FAX<br>Fax: 763-426-6506 | US Trustee Office<br>Attn: Michael Fadlovice<br>300 S. 4th Street, Suite 1015<br>Minneapolis, MN 55414<br>VIA US MAIL and EMAIL/ECF<br>michael.fadlovich@usdoj.gov<br>Ustregion12mn.ecf@usdoj.gov |
| United States Attorney<br>600 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415<br>VIA U.S. MAIL AND FAX<br>Fax: 612-664-5788 | Internal Revenue Service<br>STOP 5700<br>30 East Seventh Street<br>St. Paul, MN 55101<br>VIA U.S. MAIL AND FAX<br>Fax: 651-312-7970 |
| IRS District Counsel<br>650 Galtier Plaza<br>380 Jackson Street<br>St. Paul, MN 55101<br>VIA U.S. MAIL AND FAX<br>Fax: 651-726-7360 | Minnesota Dept. of Revenue<br>Bankruptcy Section<br>600 North Robert Street<br>P.O. Box 64447<br>St. Paul, MN 55164-0447<br>VIA U.S. MAIL AND FAX<br>Fax: 651-282-2817 |
| IRS Centralized Insolvency Operation<br>PO Box 7346<br>Philadelphia, PA 19101-7346<br>VIA U.S. MAIL AND FAX<br>Fax: 267-941-1015 | Mold Supplies, Inc.<br>Attn: Joan Geary<br>2305 Richfield Pkwy<br>Richfield, WI 53076<br>VIA U.S. MAIL AND FAX<br>Fax: 800-245-9523 |
| Bohler-Uddeholm Corp<br>Attn: Jessica Barnes<br>1058 National Parkway<br>Schaumburg, IL 60173<br>VIA U.S. MAIL AND FAX<br>Fax: 630-883-3111 | Sturdell Industries<br>Attn: Amay Arva<br>1529 Lyell Ave<br>Rochester, NY 14606<br>VIA U.S. MAIL AND FAX<br>Fax: 585-464-9713 |
| EDM Sales & Supplies<br>Attn: Sheila Wentland<br>11650 – 96th Ave N.<br>Maple Grove, MN 55369<br>VIA U.S. MAIL AND FAX<br>Fax: 763-424-9460 | Highland Bank<br>Attn: Credit<br>PO Box 790408<br>St. Louis, MO 63179-0408<br>VIA U.S. MAIL AND FAX<br>Fax: 513-277-5938 |
| Vincent Tool Technologies Corp<br>Attn: Chelsey Mayer<br>4197 – 123rd Street<br>Chippewa Falls, WI 54729<br>VIA U.S. MAIL AND EMAIL<br>EMAIL: cmayer@vincenttool.com | Metal Treaters, Inc.<br>Attn: Katie Brinker<br>859 North Prior Avenue<br>St. Paul, MN 55104<br>VIA U.S. MAIL AND FAX<br>Fax: 651-646-7705 |

| | |
|---|---|
| Schmolz & Bickenbach<br>Attn: Christine Sudeikis<br>365 Village Drive<br>Carol Stream, IL 60188<br>VIA U.S. MAIL AND FAX<br>Fax: 630-682-4587 | St. Paul Engraving<br>Attn: John Seiberlich<br>6150 Field Stone Court<br>Stacy, MN 55079<br>VIA U.S. MAIL AND FAX<br>Fax: 651-462-9343 |
| Anoco Metal Services, Inc.<br>Attn: Tara Zincke<br>1105 – 19th Ave. S.<br>Princeton, MN 55371<br>VIA U.S. MAIL AND FAX<br>Fax: 763-788-2557 | Hire Authority, LLC<br>Attn: Lisa Oakley<br>PO Box 13188<br>Milwaukee, WI 53213-0188<br>VIA U.S. MAIL AND FAX<br>Fax: 651-483-8205 |
| Yudo, Inc.<br>Attn: Amanda Schultz<br>33875 Capitol Street<br>Livonia, MI 48150<br>VIA U.S. MAIL AND FAX<br>Fax: 734-744-8123 | Carlson Advisors, LLP<br>Attn: Julie Voight<br>7101 Northland Circle, Suite 123<br>Minneapolis, MN 55428<br>VIA U.S. MAIL AND FAX<br>Fax: 763-535-8154 |
| Micro-Weld, Inc.<br>Attn: Denise Klosterman<br>10550 County Rd. 81, Ste. 109<br>Maple Grove, MN 55369<br>VIA U.S. MAIL AND FAX<br>Fax: 763-425-8815 | Aerotek Commercial Staffing<br>Attn: Taylor Drayer<br>PO Box 198531<br>Atlanta, GA 30384-8531<br>VIA U.S. MAIL AND EMAIL<br>EMAIL: tdraayer@aerotek.com |
| M&M Polishing, Inc.<br>Attn: Mark Molitor<br>24439 Typo Creek Drive<br>Stacy, MN 55079<br>VIA U.S. MAIL AND FAX<br>Fax: 651-462-5302 | Incoe<br>Attn: Cindy Hackerd<br>1740 E. Maple Road<br>Troy, MI 48083<br>VIA U.S. MAIL AND FAX<br>Fax: 248-556-7753 |
| Orrock Direct Industrial Courier, Inc.<br>Attn: Kurt Orrock<br>12161 – 197th Ct. NW<br>Elk River, MN 55330<br>VIA U.S. MAIL AND FAX<br>Fax: 763-241-9510 | MSC Industrial Supply<br>Attn: Kenyetta Futch<br>75 Maxess Road<br>Melville, NY 11747-0000<br>VIA U.S. MAIL AND FAX<br>Fax: 800-255-5067 |
| DME Company<br>Attn: Balamurugan Sakthivel<br>29111 Stephenson Highway<br>Madison Heights, MI 48071<br>VIA U.S. MAIL AND FAX<br>Fax: 888-808-4363 | |

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In re:                                          Bky. No. 16-41999
                                                Chapter 11 Case
Tooling Science, Inc.
                                                **INTERIM ORDER**
                              Debtor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This matter came before the Court on the Debtor's motion for expedited relief and for an order approving a post-petition secured loan. Appearances are as noted on the record. Based on the arguments of counsel, all of the files, records, and proceedings herein, the Court being fully advised in the premises and accordingly:

IT IS ORDERED:

1.      The Debtor's request for expedited relief is granted.

2.      The Debtor's motion is granted in its entirety, pending the final hearing.

3.      It is necessary for the Debtor to obtain post-petition financing for a period of time and in an amount which would allow the Debtor to continue to operate as a going concern.

4.      The Secured Lender Parties have indicated a willingness to extend post-petition secured credit under the terms and conditions set forth in the Debtor's motion.

5.      The Debtor, in order to satisfy its need for post-petition financing as determined in the exercise of its sound business judgment, desires to enter into the post-petition loans.

6.      The Debtor is authorized to borrow up to $100,000.00 from the Secured Lender Parties pending a final hearing on this matter under the terms of conditions set forth in this motion and its exhibits.

7.      The post-petition loans shall be secured by a second priority attached and perfected security interest in favor of the Secured Lender Parties pursuant to section 364(c)(2) and section 364(d)(1) of the Bankruptcy Code in all of the Debtor's now owned or hereafter acquired property of any kind or type (the "Collateral"), subject only to the lien of MidwestOne's secured loans.

8.      The terms of the proposed loans are fair and reasonable, were negotiated by the parties at arms' length and are in good faith and are the best available to the Debtor under present market conditions and the Debtor's financial circumstances.  Any credit extended by the Secured Lender Parties is extended in good faith, as that term is used in section 364(e)(1) of the Bankruptcy Code.

9.      Entry of this Order will minimize disruption of the Debtor's business as a going concern, will increase the possibilities for a successful reorganization and is in the best interest of the estate.

10.      The Secured Lender Parties are "good-faith" lenders within the meaning of section 364(e) of the Bankruptcy Code, and the credit extended by the Secured Lender Parties pursuant to this Order and the Individual Secured Notes shall be deemed to be extended in good faith within the meaning of section 364(e) of the Bankruptcy Code and the Secured Lender Parties are entitled to the protections afforded by section 364(e) of the Bankruptcy Code.

11.      The Debtor is hereby authorized, but not directed, to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the relief as described and approved in this Order.

12.      Entry of this Order is without prejudice to the rights of the Debtor, including, but not limited to, the right to seek further, other, or different relief under the Bankruptcy Code.

13.    This Court shall retain jurisdiction to hear and determine all matters arising from

the implementation of this Order.

14.    This Order is effective immediately upon its entry.


Dated:                        _____
                              Hon. William Fisher
                              United States Bankruptcy Court Judge

4846-1828-3828, v.  1

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

------------------------------------

In re:                                        Bky. No. 16-41999
                                              Chapter 11 Case
Tooling Science, Inc.
                                              **FINAL ORDER**
                          Debtor.

------------------------------------

This matter came before the Court on the Debtor's motion for expedited relief and for an

order approving a post-petition secured loan. Appearances are as noted on the record. Based on

the arguments of counsel, all of the files, records, and proceedings herein, the Court being fully

advised in the premises and accordingly:

IT IS ORDERED:

1.     The Debtor's motion is granted in its entirety.

2.     The Debtor is authorized to borrow, subject to and accordance with the terms and

conditions of the Individual Secured Notes, up to an aggregate of $150,000.00 pursuant to the

budget attached as Exhibit E to the Motion.

3.     Pursuant to 11 U.S.C. § 362(d), the Secured Lender Parties are permitted to a

post-petition lien on the Debtor's assets subject to the same provisions and priority as the

Individual Lender's previously-filed UCC-1 financing statement.

4.     The Secured Lender Parties are "good-faith" lenders within the meaning of

section 364(e) of the Bankruptcy Code, and the credit extended by the Secured Lender Parties

pursuant to this Order and the Individual Secured Notes shall be deemed to be extended in good

faith within the meaning of section 364(e) of the Bankruptcy Code and the Secured Lender

Parties are entitled to the protections afforded by section 364(e) of the Bankruptcy Code.

5.     The Debtor is hereby authorized, but not directed, to execute and deliver all instruments and documents, and take such other actions, as may be necessary or appropriate to implement and effectuate the relief as described and approved in this Order.

6.     Entry of this Order is without prejudice to the rights of the Debtor, including, but not limited to, the right to seek further, other, or different relief under the Bankruptcy Code.

7.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

8.     This Order is effective immediately upon its entry.

Dated:     _____

Hon. William Fisher
United States Bankruptcy Court Judge

4846-1828-3828, v. 1